Antonio E. BELL, Appellant,

v.

UNITED STATES, Appellee.

Nos. 94–CF–794, 99–CO–1551.

District of Columbia Court of Appeals.

Feb. 27, 2003.

---

Before REID and GLICKMAN, Associate Judges, and FERREN, Senior Judge.

ON PETITION FOR REHEARING

FERREN, Senior Judge:

This case concerns two incidents: a drive-by shooting on Q Street, N.W.—in which a man was killed and others were assaulted—and a police chase of the getaway station wagon which eventually crashed, followed by appellant Antonio E. Bell's assault on police officer Clarence Douglas with a 9 mm Smith & Wesson pistol while attempting to escape. Because the evidence against the charged assailants on Q Street was based significantly on the decedent's proffered dying declaration—which we found not to satisfy the requirements for admission in evidence and held not harmless—all convictions attributable to the Q Street incident, including those of Bell, were reversed and remanded for a new trial without the tainted evidence. Even without regard to the dying declaration, however, we sustained Bell's convictions for assault on Officer Douglas at the crash site based on Bell's admission that he had been in the fleeing station wagon, on officer Jerald Brown's testimony that he had seen Bell shoot at Douglas, and on the 9 mm Smith & Wesson pistol found along the path of Bell's flight from the crashed vehicle. We also affirmed Bell's convictions on the "related counts for PFCV [possession of a firearm during a crime of violence], PPW [possession of a prohibited weapon], and CPWL [carrying a pistol without a license]." *Bell v. United States,* 801 A.2d 117, 120 (2002).

Appellant Bell petitions for rehearing or rehearing en banc on three grounds: (1) "the erroneously admitted hospital hearsay cannot be held harmless as to the convictions related to the car crash scene"; (2) "his conviction for possessing a gun other than the one alleged to be in his actual possession was already based on such weak evidence that any error, including the hospital hearsay, would have infected it"; and (3) his "convictions left standing cannot be sustained on any reading of the record and ... were surely based on testimony that was the subject of the issue related to the bad faith withholding of Jencks and/or *Brady* material." We reject the first argument summarily. We reject the other two as well, as explained below, and amend our opinion to reflect these clarifications.

The confusion concerns Bell's conviction for possession of a prohibited weapon (PPW), D.C.Code § 22–3214(a) (1996), based on a Tech 9 (AP 9mm) handgun which, along with the other weapon, our opinion related directly to the shooting at Officer Douglas at the crash scene. We erred in doing so. The evidence showed that the only weapon used to shoot at Officer Douglas—and thus the only weapon serving as the basis for Bell's assault (ADW) and two other firearms (PFCV and CPWL) convictions—was the 9 mm Smith

& Wesson pistol found in the breezeway along Bell's flight path at the crash scene, not the Tech 9 recovered from the station wagon at the crash scene that underlay the PPW conviction. Bell uses this distinction to argue that his PPW conviction was based on weak evidence and in any event was tainted—harmfully—by introduction of the Tech 9 weapon in evidence through the testimony of the discredited Officer Gibson.

Assuming, as we have for the other Bell convictions, that Officer Gibson's testimony violated Jencks and *Brady* obligations, we find no basis for concluding that Gibson's testimony would have warranted Jencks or *Brady* sanctions as to Bell's PPW conviction, or that the PPW conviction otherwise was premised on evidence too weak to warrant affirmance. In the first place, although Officer Gibson identified the Tech 9 at trial as a weapon found inside the station wagon under the front seat, Officer Brown made the same identification at trial, including a reference to it in a photograph from the crime scene. Furthermore, Officer Curtis, the firearms expert, confirmed at trial that the weapon was fully operable. While it is true that the government introduced the Tech 9 in evidence through Officer Gibson, it could just as well have done so through Officer Brown or even Officer Curtis—and presumably would have done so—had the trial court either stricken Officer Gibson's testimony or required its enhancement through evidence of her disciplinary proceeding. It was, after all, Officer Brown's testimony derived directly from the crime scene, coupled with appellant Bell's admission that he had been in the station wagon, that connected Bell with the Tech 9. Aside, perhaps, from establishing chain of custody, which Bell does not question on rehearing, Officer Gibson added nothing more than a cumulative reference to the PPW evidence otherwise admissible against Bell. Nor would Officer Gibson's disciplinary proceeding, if in evidence, have tainted evidence otherwise strong enough for conviction, since none of the evidentiary discrepancies at that proceeding pertained to the Tech 9. In short, had Officer Gibson's testimony been stricken, or her disciplinary proceeding admitted in evidence, there is no reason to believe that the verdicts would have been different.

Heretofore, moreover, Bell has not questioned the sufficiency of the evidence against him for PPW. In any event, given the operable Tech 9 in the vehicle where Bell admittedly was present, our case law requirements for a finding of Bell's constructive possession of the Tech 9 are satisfied, as explained more fully below in the amendments we add to our previous opinion. As we elaborate, the jury reasonably could have inferred from all the evidence (circumstantial as well as direct) that Bell "knew" this weapon was in the station wagon and "had both the ability and the intent to exercise dominion or control over it." *Rivas v. United States,* 783 A.2d 125, 129 (D.C.2001) (en banc).

The petition for rehearing, accordingly, is denied, and the opinion of the court, *Bell v. United States,* 801 A.2d 117 (2002), is amended in the following respects:

1. 801 A.2d at 119, col. 2, lines 7–9 (in part) are amended to read: "... possession of a prohibited weapon ("PPW") ("Tech 9" AP 9mm), D.C.Code sec. 22–3214(a) (1996); ..." [footnote retained but omitted here].

2. 801 A.2d at 120, col. 1 (carryover paragraph), lines 16–20 (in part): "... However, we affirm Bell's convictions for PPW as well as for the assault of police officer Clarence Douglas with a dangerous weapon (ADW) and the related counts for PFCV and CPWL."

3. 801 A.2d at 131, col. 1, second full paragraph, lines 4–7 (in part): "... any possible *Brady* or Jencks Act violation is relevant only to Bell's ADW (Douglas) and weapons convictions derived from the crash scene, ...."

4. 801 A.2d at 131, col. 1, third full paragraph, lines 7–8: "The principal evidence of the assault on Officer Douglas (and related weapons offenses)...."

5. 801 A.2d at 131, col. 2, carryover paragraph, line 2: "carry a pistol. As to the PPW conviction—in addition to Bell's admission that he had been in the station wagon at the crash site, and to the other evidence of the assault on Officer Douglas—Officer Brown testified that the Tech 9 AP 9 mm weapon had been found inside the station wagon. He also identified a photograph showing the Tech 9 found at the crash site. And Officer Curtis testified that the Tech 9 was fully operable. Significantly, moreover, a Q Street witness, Ronald Brewer, heard gunshots and saw three guns sticking outside the station wagon passenger side windows (the side from which Officer Douglas later saw muzzle flashes and Officer Brown saw the shooter escape). That testimony would account for the 9 mm Smith & Wesson pistol used to convict Bell, the .32 caliber 'rusted gun' found later in the station wagon, and the Tech 9 AP mm used for the PPW conviction. Furthermore, Brewer's testimony—wholly unrelated to the tainted dying declaration—when coupled with the officers' testimony, was sufficient for a reasonable jury finding that Bell 'knew' that the Tech 9 was in the station wagon and had the ability 'to exercise dominion or control over it.' *Rivas v. United States,* 783 A.2d 125, 129 (D.C.2001) (en banc); *Johnson v. United States,* 309 A.2d 497, 499 (D.C. 1973) (applying earlier two-part, 'knowledge' and 'dominion' test for constructive possession of pistol under front seat by passenger in rear seat). Finally, as to the third, 'intent' element of constructive possession, Bell without doubt intended to wield a weapon against Officer Douglas. The fact that Bell used the 9 mm Smith & Wesson pistol, rather than the Tech 9, to assault the officer does not detract from a reasonable jury inference that Bell intended to use any weapon at hand."

6. 801 A.2d at 131, col. 2, first full paragraph, lines 1–7: "Accordingly, even if the trial judge had stricken Officer Gibson's statements at trial regarding the evidence the police had recovered upon the later search of the station wagon, and even if the details of Officer Gibson's disciplinary proceeding had come into evidence, there is no reason to believe that the jury would have reached different verdicts on Bell's convictions for ADW, PFCV, CPWL, or PPW. *Brady* and Jencks Act sanctions, therefore, are not indicated. Specifically, as to the PPW conviction and the convictions related more directly to the assault on Douglas, the failure to ...."

7. 801 A.2d at 132, col. 1, first full paragraph, lines 1–4: "For the foregoing reasons, we affirm Bell's PPW conviction, his ADW conviction (Officer Douglas), and the related counts for PFCV and CPWL at the crash site. However, ...."

*So ordered.*